UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2006-197

MELINDA WRIGHT                                                    PLAINTIFF

VS.                              OPINION AND ORDER

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                   DEFENDANT

This matter is before the court on the motion for summary judgment of the claimant (Doc. 6) and the cross-motion for summary judgment of the Commissioner (Doc. 8).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298(6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines

1

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability.  Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)).  Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment.  Id.  "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'"  Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).  Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience.  Id.  (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)).  Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work.  Id.  Lastly, even if the claimant cannot perform her past

2

relevant work, she is not disabled if she can perform other work which exists in the national economy.  Id.  (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was 37 years old and has a tenth grade education.  She has prior relevant employment as a postal worker, factory worker and as a cashier.  She last worked, on a temporary basis, as a postal worker.  The claimant testified that, in August 2003, she stopped working because although she has had back pain over the years, the pain became more intense and she could no longer stand to sort mail.

In July 2003, the claimant began treating with Dr. Joseph Hartig.  She complained of burning lower back pain that radiated down her right leg, upper back pain, anxiety and left arm pain with numbness.  (AR 127-34).  A 2003 MRI demonstrated the claimant has degenerative disc disease at multiple levels, and a 2003 x-ray showed minimal right concave scoliosis.  The claimant also complains of panic attacks, carpal tunnel and has been diagnosed as having bursitis of the left shoulder.

At the hearing, the ALJ sought testimony from the claimant and a vocational expert.  Upon hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining disability.

In the case at bar, the ALJ determined at step one that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ determined that the claimant has degenerative disc disease of the lumbosacral spine and left shoulder bursitis that is considered "severe." The ALJ also found that claimant's complaints of panic disorder and bilateral carpal tunnel syndrome are non-severe impairments.

At step three, the ALJ determined that although the claimant has impairments that are "severe," she does not have an impairment that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step four, the ALJ found that the claimant cannot perform her past relevant work.

Lastly, at step five, the ALJ determined that the claimant could perform a full range of sedentary work. The vocational expert opined that given claimant's age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy for which the claimant could perform. Specifically, the vocational expert testified that a claimant with these limitations could perform unskilled sedentary hand packaging jobs, 400 jobs locally and 300,000 jobs nationally; bench assembly, 1,500 jobs locally and over 300,000 jobs nationally; sedentary cashier, 500-600 jobs locally and 100,000 jobs nationally; and desk security monitor, 400 jobs locally and 60,000 jobs nationally. (AR 263-64). Based on this testimony, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in not giving appropriate weight to the medical opinion of her treating physician, Dr. Hartig. Dr. Hartig opined that the claimant could not sit, walk or stand for more than two hours out of an eight-hour day. The claimant argues that Dr. Hartig's assessment was substantiated by the objective evidence and, therefore, his opinion should have been given controlling weight.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well - supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

Here, the ALJ found that although claimant suffers from degenerative disc disease of her spine, Dr. Hartig's functional limitations were too restrictive and, therefore, not entitled to great weight. The ALJ stated:

> The medical record shows that beginning July 2003 the claimant has been taking prescription Percocet along with other medications prescribed by her primary treating physician, Joseph Hartig, M.D., for complaints of back pain and associated lower extremities symptoms, as well as conservative treatment for upper respiratory infections and abdominal pain related to documented cholelithiasis. (Exhibit 2F; 10F; 11F).
>
> In January 2004, she was assessed with mild degenerative disc disease of the lumbar spine after review of the September 2003 MRI of the lumbar spine and a physical examination, which showed normal motion and strength of the bilateral lower extremities. Sensory was intact and

5

> straight leg raise was negative for any abnormality (Exhibit 9F/2).
>
> The only positive finding on consultative examination was reduced flexion and extension of the lumbosacral spine to 60 degrees (N: 90 degrees) secondary to pain (Exhibit 4F). Repeat radiographs of the lumbar spine and cervical spine revealed no significant findings (Exhibit 2F/13, 16, 17). Although an MRI of the lumbosacral spine in September 2003 revealed mild to minimal multilevel degenerative disc disease and evidence of small herniated disc at L4-5 (Exhibit 2F/14), a lumbar MRI without contrast done in the upright weight bearing position revealed no evidence of a disc herniation or spinal stenosis. In fact, other than evidence consistent with Schmorl's node formation, the study was essentially unremarkable (Exhibit 11F/19).
>
> Despite these findings, however, on a physical capacity assessment completed on July 18, 2005, Dr. Hartig limited the claimant to sit, as well as to walk/stand 15 minutes at [a] time and less than 2 hours in an 8-hour workday, and lift/carry 10 pounds occasionally. The doctor further opined the claimant should never attempt to stoop (bend), crouch/squat, and climb ladders. Limitations in reaching, handling or fingering were limited to 35% of an 8-hour workday. While having no specialty in mental illness, and there being no documentation of such, Dr. Hartig believed the claimant's pain would constantly interfere with her attention and concentration. Further, she experienced panic attacks and could be expected to be absent from work more than four days per month (Exhibit 10F).
>
> . . .
>
> As for the opinion evidence, the Administrative Law Judge finds Dr. Hartig's residual functional capacity assessment borders on the absurd. The only limitations that have any support are the ones relating to the carpal tunnel syndrome. There is absolutely no medical evidence supporting the remainder of his assessment.

(AR 16-17).

The court finds that the ALJ articulated clear reasons why he discredited treating physician Dr. Hartig's assessment: he did not find the treating physician's overly restrictive physical capacity assessment to be consistent or supported by the record. The ALJ analyzed the records and determined Dr. Hartig's

6

credibility by looking at the objective medical evidence. The Court finds that substantial evidence supports the ALJ's finding that Dr. Hartig's assessment was not fully credible.

The claimant also argues that the ALJ improperly substituted his own opinion in establishing her RFC instead of relying on the opinions of the physicians of record. The ALJ is responsible for determining a claimant's RFC, a determination that must be based on medical evidence that addresses the claimant's ability to function in the workplace. Roy v. Apfel, 23 Fed. Appx. 389 (6th Cir. 2001); 20 C.F.R. § 404.1546.

The ALJ reviewed the medical evidence and stated:

> The claimant alleges disability and an inability to work due to chronic back pain and pain, numbness, weakness and burning/tingling sensation into the legs, bilateral hip pain and left shoulder pain. However, she denied any urinary or fecal incontinence related to her back symptoms. She stated she cannot tolerate more than 30 minutes of walking and cannot lift even a gallon of milk, 10 pounds, or a six-pack of Coke. She reported increased severity of her back pain when she sits more than 30 minutes at a time (Exhibit 4F/1). At the hearing, she testified she cannot lift or walk now, and that sitting is a problem; yet, she reported she is able to sit and play cards and watch movies with friends; she is able to drive by herself; and she is able to go to the store by herself (Exhibit 7F/3-4); and testified she occasionally goes out to eat at restaurants. At the hearing, her gait was normal and she did not require an assistive device. She did not demonstrate any pain behavior or stiffness when moving from standing to sitting and vice versa. She sat comfortably during the entire 50-minute hearing, demonstrating no expression of pain, even though she testified she had not taken her pain medications that morning. She has had only conservative treatment with pain medication. She testified she was only recently referred to a pain specialist, but there is no corroborating evidence of this. She also testified she was referred to a surgeon who advised her that surgery was not an option. Again, there is no evidence corroborating her statement. Her history shows no more than mild degenerative disc disease (Exhibit 4F; 9F; 11F/19). She had no difficulty moving around the examination room and got on and off the exam table without

7

> difficulty (Exhibit 4F/3).
>
> Despite her assertions of pain and physical limitations, she stated her day typically involves doing a little bit around her two-story house on 1.5 acres, and sitting or lying down on the couch and watching television (Testimony and Exhibit 7F/3), but she has difficulty in bending and twisting. She testified that, although her adult daughter and son help with cleaning and laundry, she cooks and does dishes, albeit with breaks. Although she alleges side effects[,] sleepiness and grogginess from her pain medications, there is no record of such in the record.
>
> . . .
>
> Dr. Kahwash [the consultative examiner] opined the claimant's capacity for lifting, carrying, standing, walking, sitting, climbing, balancing, stooping, crouching, kneeling, and crawling are moderately restricted, meaning her ability to function in these areas are limited but satisfactory. He opined the claimant has no restrictions regarding her ability for reaching and handling (Exhibit 9F/4).
>
> . . ..
>
> However, in giving the claimant's testimony some credence, the Administrative Law Judge finds the claimant more reasonably is limited to sedentary work. Accordingly, the residual functional capacity must be based principally, if not solely, on the claimant's alleged symptoms.

(AR 15-17).

The court finds that in assessing the claimant's RFC, the ALJ properly considered the claimant's testimony, the objective medical evidence, and Dr. Kahwash's opinion. The ALJ also considered the opinion of Dr. Eggerman in concluding that claimant's anxiety and panic attacks do not constitute a severe limitation.

The claimant argues that since Dr. Kahwash did not provide a specific residual functional capability, the ALJ erred in relying on his assessment. The case upon which the claimant relies,

8

however, is distinguishable from the case at bar. Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 293-94 (1st Cir. 1986). In Rosado, the court found that a non-examining physician's judgment that the claimant's condition was "considered slight" was not sufficient for assisting the ALJ in determining whether the claimant could perform sedentary work. Id.

In the case at bar, Dr. Kahwash is an examining consultant. In his report, he explained that upon examination he found the claimant was in no acute distress, had a normal gait and station and did not need assistive devices for ambulation. (AR 153). He also observed that she could perform fine manipulation exercises. In addition, he noted that the range of motion in her spine was limited to 60 degrees, but he did not find any local tenderness or deformities. He also did not detect any muscle spasms, and her straight leg raising was negative in both sitting and supine positions. He concluded that based upon his objective findings from his examination of the claimant, that she had moderate restriction in her ability to lift, carry, stand, walk, sit, climb, balance, stoop, crouch, kneel and crawling. (AR 154).

Contrary to the report in Rosado, Dr. Kahwash's report provided the ALJ with information upon which he could conclude that the claimant was capable of performing sedentary work. See Roy, 23 Fed. Appx. at 390; 20 C.F.R. § 416.946.

Upon considering the evidence, the ALJ found that:

> the claimant has the residual functional capacity to perform sedentary work activity. Specifically, as moving heavy

9

>objects may exacerbate her back pain resulting from her degenerative disc disease and left shoulder pain from bursitis, she is limited to exerting up to 10 pounds of force occasionally and 5 pounds frequently to lift, carry, push or pull items. Standing and walking for lengthy periods also exacerbates her back pain. Accordingly, she is limited to standing and walking 2 hours in an 8-hour workday at intervals of 15 minutes before she must sit. Sitting continuously also exacerbates her back pain and causes stiffness. Therefore, although she can sit 8 hours she must have the opportunity to stand and stretch briefly every 30 minutes. Due to pain and limitations of her range of motion in her lower back she can only occasionally bend at the waist, but at no more than a 60 degree angle. Also, she is limited to occasional climbing of stairs or ramps, crouching, crawling, kneeling and balancing. As Percocet makes her sleepy, she should not climb ladders, scaffolds or ropes. Since she has pain in her left shoulder caused by bursitis, she should not do any overhead work with her left arm.

(AR 15).

The court finds that this is not a case where the ALJ substituted his own opinion and ignored the medical evidence. Instead, the ALJ properly articulated his analysis of the evidence and how the evidence supported his RFC determination. Accordingly, the court finds that the ALJ's RFC determination is supported by substantial evidence and will not be disturbed.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds the findings of the ALJ are supported by

substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 6) be, and it hereby is, **denied** and the cross motion for summary judgment of the Commissioner (Doc. 8) be, and it hereby is, **granted.** That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 21st day of May, 2007.



Signed By:
*William O. Bertelsman* WOB
United States District Judge